GOLDEN ADKINS *v.* THE CITIZENS' BOARD OF THE CITY OF HUNTINGTON *et al.*

(No. 7305)

Submitted March 24, 1931. Decided April 19, 1932.

*A. A. Lilly,* for relator.

*Wm. C. Graham, Vinson, Thompson, Meek & Scherr, Scott, Graham & Wiswell,* and *Marcum, Lovins & Gibson,* for respondents.

MAXWELL, JUDGE:

Floyd S. Chapman, mayor of the city of Huntington, having died, the duty of appointing a successor for the unexpired term devolved upon the Citizens' Board of said city. Acts 1931, ch. 76, sec. 43. The said board is composed of twenty-one members—two from each of the ten wards of the city and one member at large.

There were more than a score of candidates for the vacancy. At its first session to select an appointee, the board took ten ballots, and at its second session, two days later, it took ten more. At each session all members were present and participated in the balloting. On the twentieth ballot George E. Bradshaw, having received a majority, was declared appointed to the vacancy. The following day he executed the required bond, took the oath of office, and entered upon the discharge of his duties.

On the first ballot of the said initial session of the board, Golden Adkins, the relator, received seven votes, being a plurality. He now contends that by reason of having received said plurality, he was the legally selected appointee for the vacancy. The prayer of the petition is that the Citizens' Board be required to declare him to be the duly appointed mayor, and that the clerk of the city be required to administer the oath of office.

The statute above cited, being an amended portion of the charter of the city of Huntington, although requiring the Citizens' Board to fill by appointment a vacancy in the office of mayor, does not prescribe the manner in which the choice shall be made. However, before the balloting at the initial session, the president of the board, according to a certified copy of the minutes now before us, "announced that the manner of selecting a successor would be by a majority vote of the Citizens' Board." Following the thirteenth ballot, being the third ballot of the second session, a motion was made and seconded that the balloting cease and that Golden Adkins (relator) be declared the mayor. The president of the board ruled that the motion was out of order. Thereupon, there was a motion made and seconded "that the decision of the President be the decision of the Board." Upon roll call, the ruling of the chair was sustained by a vote of sixteen to five.

But the relator says that the announcement made by the president of the board before the balloting began that the choice would be by majority vote and the said action taken by the board after the thirteenth ballot, is not binding, because, he says, the board by its deliberate action in June, 1931, in selecting members of the Civil Service Board of the said city by plurality vote, established a precedent or rule which cannot be departed from except upon express and formal repudiation thereof; that there not having been such express repudiation, the plurality rule still obtains.

We cannot accord to the action of the Citizens' Board in selecting appointees for the Civil Service Board by a plurality vote the outstanding significance and controlling effect for which the relator contends. Unauthorized and unwarranted

procedure cannot set a binding precedent or establish a rule, especially when such action contravenes an express statutory requirement. We have this general statute: "Words purporting to give a joint authority to three or more persons confer such authority upon a majority of them, and not upon any less number." Code 1931, 2-2-10(b). This rule is applicable except where an act provides differently. It applies to the Citizens' Board of the city of Huntington as it does to all other governmental bodies of the commonwealth composed of three or more members. Therefore, the powers and duties of the Citizens' Board must be exercised in accordance with this general rule, except as otherwise specifically provided in the charter. It was not necessary for the legislature specifically to incorporate the majority requirement in the Huntington charter. The general statute puts it there.

And, in turn, the general statute, not being derogatory of the common law, must be interpreted in the light thereof. It is the common law that where joint authority is involved, a quorum being present, legal action can be taken by a majority, and by none less. II McQuillin on Municipal Corporations (2nd Ed.), sec. 624. Tiedeman on Municipal Corporations, sec. 99; II Dillon on Municipal Corporations (5th Ed.), secs. 521, 522. In the last section cited the author says:

> "And, as a general rule, it may be stated that not only where the corporate power resides in a select body, as a city council, but where it has been delegated to a committee or to agents, then, in the absence of special provisions otherwise, a minority of the select body, or of the committee or agents, are powerless to bind the majority or do any valid act. If all the members of the select body or committee, or if all the agents are assembled, or if all have been duly notified, and the minority refuse or neglect to meet with the others, a majority of those present may act, provided those present constitute a majority of the whole number. In other words, in such case, a major part of the whole is necessary to constitute a quorum, and a majority of the quorum may act."

If, as is often the case, there is special legislative requirement that for stated purposes joint authority can be exercised only by a majority or say two-thirds of all the members of a board or other governmental agency, then of course the rule which requires only a majority of a quorum does not apply. An example of this is found in section 14 of the Huntington charter, Acts 1921 (Municipal Charters), ch. 11, wherein it is required that there shall be a "two-thirds vote of all members elected on said board" to remove a member of the Board of Commissioners (including mayor) of said city.

As already noted, the entire membership of the Citizens' Board (twenty-one) was present and voted at both sessions of the board when balloting on the choice of an appointee for mayor. There is no principle of law, common or statutory, which sustains the proposition that less than a majority of those present could control the action of the board.

The peremptory writ of mandamus is refused.

*Writ refused.*